## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| PHARMERICA CHICAGO, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10 C 2741 |
| | ) | |
| DAVID MEISELS, *et al.*, | ) | **Magistrate Judge** |
| | ) | **Nan R. Nolan** |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff PharMerica Chicago, Inc., f/k/a KPS Chicago, Inc. ("PharMerica") filed a Complaint against Defendants David Meisels ("Meisels"), Continental Care Center, Inc. ("Continental"), Ambassador Nursing and Rehabilitation Center, Inc., f/k/a Ambassador Nursing Center ("Ambassador"), Bloomingdale Pavilion, LLC ("Bloomingdale Pavilion"), BCDM, LLC ("BCDM"), Bloomingdale Terrace Realty, LLC ("Bloomingdale Terrace"), Meisels Family Limited Partnership ("Meisels Family LP"),[1] and Michael Filippo ("Filippo"), alleging a variety of state law claims arising from Plaintiff's inability to collect on a judgment obtained by PharMerica against West Suburban Care Center, LLC ("West Suburban").[2] In its Complaint, Plaintiff alleges fraud, breach of fiduciary duty, conspiracy to breach fiduciary duty, inducement of a breach of fiduciary duty, fraudulent transfer, unjust enrichment,

---

[1] The Complaint alleges that Meisels owns or controls Bloomingdale Pavilion, BCDM, Continental, Ambassador, Bloomingdale Terrace, and Meisels Family LP (collectively, the "Corporate Defendants"). (Compl. ¶ 32.)

[2] West Suburban is not a Defendant in the instant action.

and tortious interference with contract. Defendants now move to dismiss all of Plaintiff's claims for failure to meet the pleading standards under Federal Rules of Civil Procedure 8(a) and 9(b), and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Defendants also move to strike certain portions of Plaintiff's response in opposition to the motion to dismiss.[3] The parties have consented to the limited jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), to conduct certain specific proceedings related to the motion to dismiss and the motion to strike. For the reasons stated below, the motion to dismiss is granted in part and denied in part.

# I. BACKGROUND[4]

Plaintiff PharMerica provides pharmaceuticals and pharmaceutical management and consulting services to its customers. (Compl. ¶ 1.) One of its customers was a nursing facility located at 311 Edgewater Drive, Bloomingdale, Illinois (the "Facility"). (*Id.* ¶ 18.) Defendant BCDM was at one time the licensed operator of the Facility. (*Id.* ¶ 33.) On May 4, 2006, BCDM transferred operations of the Facility to West Suburban ("2006 Facility Transfer"), which was owned and operated by Defendant Filippo. (*Id.* ¶ 34, Ex. 3.) On the same day, Defendant

---

[3] Defendants also filed a Motion to Stay Discovery Pending Adjudication of Their Motion to Dismiss. Plaintiff filed a Motion Requesting Oral Argument on Defendants' Motion to Dismiss.

[4] The Court accepts as true all factual allegations in Plaintiff's complaint and draws all reasonable inferences in its favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

Bloomingdale Terrace, which owned the real property at 311 Edgewater Drive, entered into a lease with West Suburban. (*Id.* ¶ 36, Ex. 6.)

In May 2007, PharMerica sued BCDM, Bloomingdale Pavilion, Bloomingdale Terrace, and Meisels for outstanding amounts owed for unpaid goods and services provided to the Facility from June 1, 2004, to May 4, 2006 ("2007 Lawsuit"). (Compl. ¶¶ 41-42, Exs. 8-9); *see KPS Chicago, Inc. v. Continental Care Center, Inc., et al.*, No. 07 C 2591 (N.D. Ill. filed May 8, 2007). PharMerica also sued two other Meisels-owned facilities, Continental and Ambassador (collectively and together with Bloomingdale Pavilion, Bloomingdale Terrace and Meisels, the "2007 Lawsuit Defendants"),[5] for outstanding amounts they owed. (Compl. ¶ 43.)

West Suburban was originally named as a defendant in the 2007 Lawsuit. (Compl. ¶ 47, Ex. 8.) However, soon after PharMerica filed the 2007 Lawsuit, West Suburban's counsel, Abraham Stern, contacted PharMerica and stated that West Suburban was improperly named in the lawsuit. (*Id.* ¶ 48.) Because PharMerica's claims were for goods and services provided to the Facility, before West Suburban purchased the Facility's operations, Stern stated that West Suburban was not liable for any of the amounts owed. (*Id.* ¶¶ 49-50.) Stern also represented that West Suburban and its owner Filippo were "completely unrelated" and "not affiliated in any way with" Meisels or the other 2007 Lawsuit Defendants. (*Id.* ¶ 51.) BCDM, Bloomingdale Terrace, Meisels, Ambassador and Continental also represented in writing that they were unrelated to West Suburban. (*Id.* ¶ 52.) Based on the

---

[5] The 2007 Lawsuit Defendants are identical to the Defendants in the instant lawsuit, which also includes Filippo and Meisels Family LP.

operations transfer date and documentation provided by Stern, along with representations made by Stern, PharMerica dismissed West Suburban from the 2007 Lawsuit without prejudice and continued to provide pharmacy goods and services to West Suburban. (*Id.* ¶¶ 58-59, Ex. 13.) On May 12, 2008, the parties reached a settlement in the 2007 Lawsuit. (*Id.* ¶ 62.) In the settlement, Meisels, through his counsel, made repeated representations that he was "unrelated" and "unaffiliated" with West Suburban. (*Id.* ¶¶ 16, 57, 63.)

In November 2007, West Suburban transferred operations of the Facility to the current operator, West Suburban Nursing and Rehabilitation Center, LLC, which is owned by Moishe Gubin ("2007 Facility Transfer"). (Compl. ¶ 67.) At the same time, Bloomingdale Terrace transferred the Facility's real estate to West Suburban Nursing Realty, LLC, which is also owned by Gubin. (*Id.* ¶ 68, Ex. 14.)

On July 2, 2008, PharMerica sued West Suburban for amounts due and owing for goods and services provided after May 2006 ("2008 Lawsuit"). (Compl. ¶¶ 71-73); *see PharMerica Chicago, Inc. v. West Suburban Care Center, LLC*, No. 08 C 3775 (N.D. Ill. filed July 2, 2008). West Suburban failed to answer the complaint and PharMerica obtained a $249,373.16 default judgment on September 9, 2008 ("Default Judgment"). (Compl. ¶¶ 13, 74, Ex. 1.) Because of West Suburban's insolvency, PharMerica has been unable to satisfy the Default Judgment. (*Id.* ¶¶ 101-02.)

West Suburban became insolvent as early as May 2007 when it was unable to pay its debts as they became due, including the debt owed to PharMerica. (Compl.

¶¶ 101-02, 104-05, 132-34). During the time that West Suburban was insolvent, it transferred assets to Meisels via excessive lease payments to Bloomingdale Terrace. (*Id.* ¶¶ 124, 133.) Filippo—named owner and manager of West Suburban—and Meisels—West Suburban's *de facto* owner and manager—used West Suburban's assets to pay Meisels and his related entities before paying creditors like PharMerica. (*Id.* ¶¶ 135-36, 138-40.) Further, Meisels and Filippo unlawfully transferred West Suburban's assets by loading the consideration for the 2007 Facility Transfer into the sale proceeds for the real estate, thus avoiding West Suburban's liability to its creditors, such as PharMerica. (*Id.* ¶¶ 67-70, 98-99.) It was not until PharMerica conducted post-Default Judgment discovery after the 2008 Lawsuit that it learned that the lease payments made by West Suburban were not only a way for Meisels to hide the operations transfer proceeds, but also a way for Meisels to continue to pull out the proceeds from the Facility until he could sell both the Facility and the real property to Gubin. (*Id.* ¶¶ 67-70, 88-90.)

On May 3, 2010, Plaintiff filed the instant lawsuit. The Complaint alleges that Defendants and their agents made numerous misrepresentations to PharMerica and participated in fraudulent transfers, which resulted in West Suburban being unable to pay for goods and services provided by PharMerica or pay the Default Judgment. (Compl. ¶¶ 2-8, 13, 18-24, 41, 47-70, 85-97.) Plaintiff contends that the 2006 Facility Transfer was a sham transaction and a fraudulent transfer designed to thwart creditors of the Facility and siphon off money in excessive rent payments. (*Id.* ¶ 88.) Despite representations to the contrary by Defendants and their agents,

Plaintiff asserts that Meisels was the real party in interest of West Suburban during the period giving rise to the Default Judgment. (*Id.* ¶ 89.) Plaintiff's Complaint alleges fraud against all Defendants except Meisels Family LP (Count I); breach of fiduciary duty against Meisels and Filippo (Count II); conspiracy to breach fiduciary duty against all Defendants (Count III); inducement of a breach of fiduciary duty against Meisels, Filippo, Continental and Bloomingdale Terrace (Count IV); fraudulent transfer against Meisels, Filippo and Bloomingdale Terrace (Count V); unjust enrichment against all Defendants (Count VI); and tortious interference with contract against Meisels, Filippo and Bloomingdale Terrace (Count VII). (*Id.* ¶¶ 116-80.)

## II. STANDARD OF REVIEW

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint, not to decide its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). A Rule 12(b)(6) motion to dismiss must be considered in light of the liberal pleading standard of Rule 8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (internal citations and alterations omitted). Determination of the sufficiency of a claim must be made "on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasis omitted).

Nevertheless, a motion to dismiss should be granted if the plaintiff fails to make allegations that are "enough to raise a right to relief above the speculative level" and are sufficient to show "a plausible entitlement" to recovery under a viable legal theory. *Twombly*, 550 U.S. at 555, 559 (While the court must accept factual allegations as true, it need not credit mere labels, conclusions or "formulaic recitation of the elements of a cause of action."); *EEOC v. Concentra Health Svcs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (The complaint's "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level;' if they do not, the plaintiff pleads itself out of court."). However, "a plaintiff need not put all of the essential facts in the complaint," *Hrubec v. Nat'l R.R. Passenger Corp.*, 981 F.2d 962, 963 (7th Cir. 1992); instead, the plaintiff "may add them by affidavit or brief in order to defeat a motion to dismiss if the facts are consistent with the allegations of the complaint," *Help at Home Inc. v. Medical Capital, LLC*, 260 F.3d 748, 752-53 (7th Cir. 2001); *see Cruz v. Cross*, 2010 WL 3655992, at *2 (N.D. Ill. 2010).

While "detailed factual allegations" are not required, the plaintiff must allege facts that, when "accepted as true, . . . state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*,  129 S.Ct. 1937, 1949 (2009) (internal citation and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Once a claim has been stated adequately, it

may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563.

## III. MATERIALS OUTSIDE COMPLAINT

On a Rule 12(b)(6) motion to dismiss, the court generally must confine its inquiry to the factual allegations set forth within the four corners of the operative complaint. *See Rosenblum v. Travelbyus.com*, 299 F.3d 657, 661 (7th Cir. 2002); *Hostway Corp. v. JPMorgan Chase Bank, N.A.*, 2009 WL 2601359, at *5 (N.D. Ill. 2009). Therefore, in the usual case, if a motion to dismiss includes additional materials, the court must either ignore the documents or convert the motion to one for summary judgment. *See* Fed. R. Civ. Pro. 12(d); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993); *Hostway*, 2009 WL 2601359, at *5. However, in the Seventh Circuit, a narrow exception exists: "the court can consider documents attached to a motion to dismiss if the document is part of the pleadings that are referred to in the plaintiff's complaint, are central to his claim, and are properly authenticated (or authenticity is conceded)." *Markin v. Chebemma, Inc.*, 2010 WL 1191868, at *5 (N.D. Ill. 2010); *see Tierney v. Vahle*, 304 F.3d 734, 738-39 (7th Cir. 2002). The Seventh Circuit "has been relatively liberal in its approach to the rule articulated in *Tierney* and other cases." *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009); *e.g.*, *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (upholding consideration of an agreement quoted in the complaint and central to the question whether a property interest existed for purposes of 42 U.S.C. § 1983); *Venture Assocs.*, 987 F.2d at 431 (admitting letters, to

which the complaint referred, that established the parties' contractual relationship); *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732, 739 (7th Cir. 1986) (permitting reference to a welfare plan referred to in the complaint in order to decide whether the plan qualifies under ERISA). Further, "in ruling on a 12(b)(6) motion, a district court may take judicial notice of matters of public record without converting the 12(b)(6) motion into a motion for summary judgment." *Anderson v. Simon*, 217 F.3d 472, 474-75 (7th Cir. 2000).

## A. Defendants' Additional Materials

Defendants attached two additional documents to their Motion to Dismiss ("Motion"): (1) an Affidavit of Berard Tomassetti, Senior Vice President and Chief Accounting Officer of PharMerica ("Tomassetti Affidavit"), which was filed in the 2008 Lawsuit (Mot. to Dismiss ("Mot.") Ex. A); and (2) a May 2008 Settlement Agreement ("Settlement Agreement") between PharMerica and most of the Defendants (Mot. Ex. C).[6] In its Response to the Motion ("Response"), Plaintiff contends that because Defendants attached "additional evidence" to their Motion, it must be converted into a motion for summary judgment. (Resp. to Mot. ("Resp.") 2.) The Court disagrees.

First, the Court may take judicial notice of public records, including public court documents filed in other lawsuits, without converting a motion to dismiss pursuant

---

[6] The Motion also includes a copy of an amended complaint in the 2007 Lawsuit, which was attached as Exhibit 9 to the Complaint and attached to the Motion for the Court's convenience. (Mot. 9-10, Ex. B); *see Tierney*, 304 F.3d at 738 ("Because the [document] was attached to the complaint, it became a part of it for all purposes, and so the judge could consider it in deciding the motion to dismiss without having to convert the motion to one for summary judgment.") (internal citations omitted).

to Rule 12(b)(6) to a motion for summary judgment. *Henson v. CSC Credit Svcs.*, 29 F.3d 280, 284 (7th Cir. 1994); *see Blazquez v. Bd. of Educ. of City of Chicago*, 2006 WL 3320538, at *3 (N.D. Ill. 2006) (in ruling on motion to dismiss, court may consider facts alleged in related actions). Thus, in ruling on the Motion, the Court may consider the Tomassetti Affidavit without converting the Motion to one for summary judgment.

Second, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assocs.*, 987 F.2d at 431. Here, Plaintiff makes numerous references to the Settlement Agreement in its Complaint. (*E.g.*, Compl. ¶¶ 58-60, 62-65, 95, 119-21.) Moreover, the Settlement Agreement is central to Plaintiff's fraud claims. (*See id.* ¶¶ 65 ("Based on the earlier misrepresentations . . . , PharMerica was fraudulently induced to enter into the [S]ettlement [A]greement."), 119 ("All Defendants except Meisels Family LP, directly and/or through their agents . . . , misrepresented to PharMerica, through its agents, that Meisels and all of his entities, including the Corporate Defendants were unrelated to Filippo and West Suburban, with the intent of inducing PharMerica to enter into a settlement of the 2007 Lawsuit, to the benefit of all of the Defendants."), 121 ("PharMerica would not have agreed to that provision in the [S]ettlement [A]greement for the 2007 Lawsuit but for all of the Defendants, except Meisels Family LP, [making] fraudulent misrepresentations to PharMerica . . . .").) Finally, Plaintiff does not dispute the Settlement Agreement's authenticity.

Accordingly, for purposes of the Motion, the Settlement Agreement is considered part of the pleadings. *See Powe v. City of Chicago*, 1996 WL 99711, at *3 (N.D. Ill. 1996) (because settlement agreement is central to plaintiff's claims, the court may consider it in ruling on defendant's motion to dismiss); *Kingsley v. Huf N. Am. Auto. Parts Mfg. Corp.*, 2009 WL 1444136, at *2 (E.D. Wis. 2009) ("The settlement agreement is referred to in plaintiff's complaint and is central to plaintiff's claim, thus it constitutes part of the pleadings, and the court may consider it within the context of defendant's Rule 12(b)(6) motion."); *see also Spight v. Safer Found.*, 1999 WL 184198, at *1 n.1 (N.D. Ill. 1999) (because employee handbook is central to several of plaintiff's claims and portions were attached to complaint, the entire handbook, which was attached to the motion to dismiss, is considered part of the pleadings); *Stern v. James H. Anderson, Inc.*, 1995 WL 609329, at *3 (N.D. Ill. 1995) (finding documents attached to motion to dismiss central to Plaintiff's claims and referenced in the complaint; thus motion to dismiss not converted to one for summary judgment).

## B. Plaintiff's Additional Materials

In their Motion to Strike, Defendants contend that Plaintiff's Response to Defendants' Motion is "filled with additional factual matters and exhibits which are found nowhere in Plaintiff's Complaint." (Mot. to Strike 1.) Specifically, Defendants assert that "Exhibits 1-6 and 8-9, and pages 4 through 9 of Plaintiff's Response consist of or are entirely reliant on outside facts and are subject to being stricken." (*Id.* 2.) Plaintiff argues that the Motion to Strike should be denied because: (1) the

"additional facts" are taken from, or referenced in, the Complaint; (2) the exhibits attached to Plaintiff's Response to the Motion to Dismiss should be considered because they prove that Plaintiff alleged fraud with specificity pursuant to Federal Rule of Civil Procedure 9(b); and (3) Defendants "filed a Motion to Dismiss that included facts and documents . . . outside of [the] Complaint," such that "the Motion to Dismiss was essentially a Motion for Summary Judgment." (Resp. to Mot. to Strike 1-2.)

Plaintiff attached twelve exhibits to its Response. Exhibit 7 is a copy of the Settlement Agreement, which the Court has ruled is part of the pleadings. *See supra* § III.A. Exhibits 10, 11 and 12, to which Defendants do not object, are public records from this lawsuit and the 2008 Lawsuit. The Court will take judicial notice of these records without converting the Motion to Dismiss to one for summary judgment. *See Henson*, 29 F.3d at 284; *Blazquez*, 2006 WL 3320538, at *3. In regards to the remaining exhibits, the Court rules as follows:

- Exhibit 1 is a newspaper article analyzing nursing home investment trends. The article is neither referred to in the Complaint, nor consistent with its claims. Exhibit 1 is stricken.

- Exhibit 2 is an email which references the exchange of documents made prior to the execution of the Settlement Agreement. The Complaint makes reference to these documents (*e.g.*, Compl. ¶¶ 54-55); therefore, the email is consistent with allegations made in the Complaint. Exhibit 2 is allowed.

- Exhibits 3-6 are drafts of the Settlement Agreement and email correspondence related thereto. Facts and correspondence related to the negotiation of the Settlement Agreement are consistent with allegations in the Complaint that Defendants made repeated representations that they were unrelated and unaffiliated with West Suburban. (*See*, *e.g.*, Compl. ¶¶ 63-66, 81, 89, 95, 119, 122.) Exhibits 3-6 are allowed.

- Exhibits 8-9 are billing records from Defendants' counsel. The Complaint makes reference to these documents. (Compl. ¶¶ 85, 91-96.) Further, the records are consistent with allegations in the Complaint that West Suburban and the Corporate Defendants were alter egos of Meisels and each other. (*Id.* ¶¶ 15, 89, 97, 106, 109-12, 115.) Exhibits 8-9 are allowed.[7]

Defendants also request that pages 4-9 of Plaintiff's Response be stricken. (Mot. to Strike 2.) Defendants contend that "almost the entirety of [Plaintiff's] 'Background and Allegations' section in its Response consists of 'facts' that were not

---

[7] Plaintiff cites *United States ex rel. Liotine v. CDW Gov't, Inc.*, 2009 WL 3156704 (S.D. Ill. 2009) for the proposition that it may attach documents to be considered by the Court that were not included in its Complaint to dispute allegations that it did not plead fraud with specificity pursuant to Rule 9(b). (Resp. to Mot. to Strike 6.) The Court is not persuaded. *Liotine* did not address whether a plaintiff can supplement its response to a motion to dismiss with additional factual matter without converting it to a summary judgment motion. Instead, *Liotine* merely addressed whether the additional document was admissible evidence pursuant to Federal Rule of Evidence 408. *Liotine*, 2009 WL 3156704, at *2-3. The Court also declines Plaintiff's request to consider the stricken documents and convert the motion to dismiss to one for summary judgment pursuant to Rule 12(d). (*See* Resp. to Mot. to Strike 7-8); *see also Hecker*, 556 F.3d at 583 (decision whether to convert motion to dismiss to one for summary judgment left to the sound discretion of the district court).

contained anywhere in the Complaint." (Reply in Supp. of Mot. ("Reply") 3.) While Plaintiff's citations to the record are sparse, the "Background and Allegations" section does make reference to the Complaint, its Exhibits, and the Exhibits attached to the Response that have been allowed. Nevertheless, to the extent the "Background and Allegations" section references facts inconsistent with the Complaint, its Exhibits, or the Exhibits attached to the Response that have been allowed, they are stricken.

In sum, for the reasons stated above, Defendants' Motion to Strike is granted in part and denied in part.

## IV. DISCUSSION

### A. The 2007 Lawsuit

In May 2007, based on the purported misrepresentations by the 2007 Lawsuit Defendants, PharMerica dismissed West Suburban from the 2007 Lawsuit and continued to provide it with goods and services. (Mot. 9; *see* Compl. ¶¶ 51-52, 58-59.) In its Complaint, Plaintiff alleges that "had [it] known that Meisels was still affiliated with West Suburban, it would not have continued to provide goods and services" to West Suburban, and it would not have "enter[ed] into the settlement agreement for the 2007 Lawsuit." (Compl. ¶¶ 60, 66.)

Defendants contend that PharMerica believed in 2007 **before** settling the 2007 Lawsuit that West Suburban and Meisels had conspired to enter into a sham transaction, so that Plaintiff cannot now claim Defendants made any misrepresentations. (Mot. 10-11.) Defendants assert that "the very 'scheme' and

'sham transaction' about which PharMerica complains that it learned about only after obtaining a judgment against West Suburban in September 2009 and had engaged in post-judgment discovery sometime thereafter, PharMerica had actually alleged in 2007—and continued to do business with West Suburban nonetheless!" (*Id.* 10.) Specifically, Defendants point to allegations made in the 2007 Lawsuit after West Suburban was dismissed:

> In May 2006, West Suburban Care Center, LLC f/k/a Bloomingdale Terrace II, LLC ("West Suburban") assumed the operations of Bloomingdale from BCDM pursuant to an Operations Transfer Agreement ("OTA"). The consideration flowing to Bloomingdale and BCDM in return for the transfer from Bloomingdale and BCDM under the OTA was nominal at best, and may prove to be nothing. However, West Suburban leases the real property on which it operated from [Bloomingdale Terrace Realty, LLC ("BTR")], and transferred funds to BTR purportedly as rent payments. In actuality, the lease payments were greater than the value of the leased premises and were made to transfer funds to Mr. Meisels to the detriment of Bloomingdale's creditors, including [PharMerica]. Ultimately, the OTA and lease agreement were nothing more than a sham transaction designed to prefer Mr. Meisels to the detriment of [PharMerica] and other creditors.

(Compl. Ex. 9 ("2007 Lawsuit Amended Complaint") ¶ 17.) Defendants contend that these allegations are "sadly and shockingly similar" to those in the instant Complaint:

> In a document dated May 4, 2006, BCDM (owned and operated by Meisels) transferred operations of the Facility to West Suburban (purportedly owned and operated by Filippo), which was originally named Bloomingdale Terrace, II, LLC. The Operations Transfer Agreement shows that West Suburban paid virtually nothing for the operations of the Facility. However, in another document dated May 4, 2006, the entity owing the [Facility's real property](owned and operated by Meisels), entered into a Lease with West Suburban, the "new" owner of the operations. . . . The Lease shifted the amount West Suburban should have paid BCDM for the sale of the operations of the Facility into lease payments to a related real estate entity,

Bloomingdale Terrace, as well as set up a way to siphon off funds from the operations after that date to Meisels. . . . Upon information and belief, the May 4, 2006 Operations Transfer was a sham and fraudulent transfer. In addition to shifting consideration to lease payments to thwart the creditors of the operations at that time, it also created a way for Meisels to siphon off money after the transaction in excessive rent payments.

(Compl. ¶¶ 34-36, 38, 88) (internal citations omitted). Thus, Defendants argue that by attaching a copy of the 2007 Lawsuit Amended Complaint, Plaintiff has pled itself out of court. (Mot. 8-10); *see Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) ("Our case law recognizes that a party may plead itself out of court by pleading facts that establish an impenetrable defense to its claims. A plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits. If the plaintiff voluntarily provides unnecessary facts in her complaint, the defendant may use those facts to demonstrate that she is not entitled to relief.") (internal citations omitted).

Plaintiff argues that Defendants mischaracterize the two pleadings. (Resp. 10.) "At the time PharMerica filed its Amended Complaint in the 2007 Lawsuit, it believed the sham was the structure of the [2006 Facility Transfer], and to whom the lease payments were being made (Meisels and his related entities), not who made them (West Suburban and Filippo)." (*Id.*) The Court agrees.

The 2007 Lawsuit alleged that all the consideration for the 2006 Facility Transfer was loaded into the lease payments to Bloomingdale Terrace with only nominal consideration to BCDM, all of which was designed to prefer Meisels at the detriment of BCDM's creditors. (2007 Lawsuit Amended Complaint ¶ 17.) The 2007 Lawsuit, however, does not allege that West Suburban or Filippo was a part of this

16

fraud. Nor does it allege that PharMerica knew that Meisels was the real party in interest for West Suburban.

On the other hand, the instant Complaint alleges that the fraud was perpetuated when Meisels represented to the creditors of BCDM that the operations had been transferred to an unrelated entity, and that the insolvent BCDM could not pay PharMerica for the outstanding amounts owed, when in reality, Meisels remained in control of the Facility through his alter ego West Suburban. (Compl. ¶¶ 89-91, 97, 104.) Thus, in the instant Complaint, the structure of the 2006 Facility Transfer was not the sham; instead, the transfer itself was the sham transaction. (*Id.* ¶ 88.) It was not until PharMerica conducted post-Default Judgment discovery that it learned that the lease payments made by West Suburban were not only a way for Meisels to hide the operations transfer proceeds, but also a way for Meisels to continue to pull out the proceeds from the Facility until he could sell both the Facility and the real property to Gubin. (*Id.* ¶¶ 67-70, 88-90.)

In sum, accepting all well-pleaded facts in the Complaint as true, which the Court must do when ruling on a motion to dismiss, the Court concludes that the fraud allegations in the instant Complaint are materially different than those in the 2007 Lawsuit. Accordingly, Plaintiff has not pled itself out of court.

## B. Settlement Agreement

Defendants contend that the Settlement Agreement bars Plaintiff's lawsuit. (Mot. 13-17.) Specifically, Defendants argue that because the allegedly fraudulent representations are all derived from activities that took place during or in

17

connection with the 2007 Lawsuit, the Settlement Agreement's general release clause necessarily precludes Plaintiff's claims. (*Id.* 15.) The clause releases PharMerica's claims against the 2007 Lawsuit Defendants for its claims arising from the goods and services provided to West Suburban. (*See* Mot. Ex. C ("Settlement Agreement") § 2.01; *accord* Resp. 12.) Defendants also assert that in the Settlement Agreement, "PharMerica agreed that the release had been specifically negotiated and was essential to the terms of the Settlement Agreement; that it had consulted with counsel; that it voluntarily signed [the] Settlement Agreement, including its release; that the Settlement Agreement was the entire agreement among the parties; that it had not relied on any representation not set forth in the Settlement Agreement; and that it had read and understood the terms of the Settlement Agreement, agreeing to be bound thereby." (Reply 5; *see* Mot. 16-17.)

Plaintiff argues that because portions of the Settlement Agreement were induced by the fraudulent representations of the 2007 Lawsuit Defendants and their agents that Meisels and the Corporate Defendants were completely unrelated to West Suburban and Filippo, PharMerica's claims are not barred. (Resp. 12-16.) PharMerica contends that it reasonably relied on these misrepresentations to execute the Settlement Agreement releasing the 2007 Lawsuit Defendants for the amounts owed by West Suburban. (*Id.* 14.) PharMerica argues that it would never have agreed to the Settlement Agreement terms stating that Meisels and the

Corporate Defendants were unrelated to West Suburban "if it had known the truth, especially when the term itself is a lie." (*Id.*; *see also id.* 15.)

Defendants counter that the Settlement Agreement's integration clause precludes Plaintiff from relying on extrinsic evidence to establish a cause of action for fraud. (Reply 5; *see* Settlement Agreement § 4.02 ("This Agreement constitutes the entire Agreement by and between [PharMerica] and [the 2007 Lawsuit] Defendants with respect to the subject matter of this Agreement and supersedes all prior Agreements, understandings and negotiations, both written and oral, by and between [PharMerica] and [the 2007 Lawsuit] Defendants with respect to the subject matter of this Agreement.").) The Court disagrees.

Under Illinois law, which the parties agree applies to the substantive issues in this case, settlement agreements are governed by contract law. *James v. Lifeline Mobile Medics*, 792 N.E.2d 461, 464 (Ill. App. Ct. 2003). Under traditional contract interpretation principles, "the parol evidence rule generally precludes evidence of understandings not reflected in the contract, reached before or at the time of its execution, which would vary or modify its terms." *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 966 (Ill. App. Ct. 2004). "By virtue of the parol evidence rule, an integration clause prevents a party to a contract from basing a claim of breach of contract on agreements or understandings, whether oral or written, that the parties had reached during the negotiations that eventuated in the signing of a contract but that they had not written into the contract itself." *Vigortone AG Prods., Inc. v. PM AG Prods., Inc.*, 316 F.3d 641, 644 (7th Cir. 2002).

However, an integration clause does not bar a fraud claim. *Vigortone*, 316 F.3d

at 644. As Judge Posner noted,

> fraud is a tort, and the parol evidence rule is not a doctrine of tort law
> and so an integration clause does not bar a claim of fraud based on
> statements not contained in the contract. Doctrine aside, all an
> integration clause does is limit the evidence available to the parties
> should a dispute arise over the meaning of the contract. It has nothing
> to do with whether the contract was induced, or its price jacked up, by
> fraud.

*Id.*; *see Extra Equipamentos e Exportação Ltda. v. Case Corp.*, 541 F.3d 719, 723

(7th Cir. 2008) ("The parol evidence rule is a rule of contract law, and a contract

integration clause is a privately negotiated supplement to the rule, and most courts,

including, we have assumed (though the matter is not free from doubt), Illinois, hold

that neither the rule nor the clause prevents a disappointed party to the contract

from basing a tort suit on proof that in the course of the negotiations the other party

made fraudulent representations."); *Vincent*, 814 N.E.2d at 968 ("The parol evidence

rule, as a doctrine of contract law, has no application to cases sounding in tort.").[8]

Thus, "a party cannot benefit from a contract it obtained through

misrepresentation." *James*, 792 N.E.2d at 465. Accordingly,

> where a misrepresentation relates to a specific extrinsic fact materially
> affecting the value of matters at issue and where that fact is one
> peculiarly within the knowledge of the speaker and the statement is
> made with knowledge of its falsity or what the law regards as the
> equivalent of knowledge and is acted upon to the injury of the other

---

[8] As Defendants correctly note, some Illinois appellate courts have held to the contrary.
(Reply 5); *see, e.g.*, *Barile v. Sears Roebuck & Co.*, 682 N.E.2d 118, 123 (Ill. App. Ct. 1997).
The Illinois Supreme Court, however, has not issued an opinion on this issue. "When state
law on a question is unclear, . . . the best guess is that the state's highest court, should it
ever be presented with the issues, will line up with the majority of the states. And the
majority rule is that an integration clause does not bar a fraud claim." *Vigortone*, 316 F.3d
at 644 (internal citations omitted); *accord Vincent*, 814 N.E.2d at 968.

party, such misrepresentation will amount to fraud warranting a court
to set aside the contract induced in whole or in part thereby.

*Id.*

Nevertheless, Defendants argue that the Settlement Agreement's nonreliance clause "serves to bar, as a matter of law, claims of reliance in fraudulent inducement claims." (Reply 5; *see* Settlement Agreement § 4.02 ("No representation, warranty, inducement, promise, understanding <u>which is not set forth in this Agreement</u> has been made or relied upon by [PharMerica] or [the 2007 Lawsuit] Defendants.") (emphasis added).) "There are sound policy reasons for precluding fraud claims based on oral statements <u>outside the written agreement</u> where the agreement includes a nonreliance clause." *See Tirapelli v. Advanced Equities, Inc.* 813 N.E.2d 1138, 1143-44 (Ill. App. Ct. 2004) (emphasis added). Having agreed in writing that they did not rely on any representations not delineated in the contract, sophisticated business people should not be allowed to make a fraud claim based on such representations. *Id.* at 1144. Accordingly, nonreliance clauses in contracts preclude the introduction of parol evidence even in fraud cases. *Id.* at 1143 ("The presence of the integration and nonreliance clauses in the [contract] made plaintiffs' reliance on the alleged oral representations by defendants unreasonable as a matter of law."); *Extra*, 541 F.3d at 724 ("No-reliance clauses serve a legitimate purpose in closing a loophole in contract law . . . [and] head off a suit for fraud . . . .").

Here, however, the Settlement Agreement itself includes a representation by the 2007 Lawsuit Defendants that they "are unrelated to [West Suburban] and are not responsible for payment for services rendered or products provided to, or at, the

[Facility] after May 4, 2006." (Settlement Agreement § 2.01.) Thus, parol evidence of the alleged misrepresentation is not needed, and the integration and nonreliance clauses are not applicable. *Cf. Vigortone*, 316 F.3d at 644 ("By virtue of the parol evidence rule, an integration clause prevents a party to a contract from basing a claim of breach of contract on agreements or understandings, whether oral or written, that the parties had reached during the negotiations that eventuated in the signing of a contract but that they had not written into the contract itself.") (emphasis added); *Tirapelli*, 813 N.E.2d at 1144 ("Having agreed in writing that they did not rely on any representations found outside the [contract], plaintiffs cannot be allowed to argue fraud based on such representations.") (emphasis added). Accordingly, because the purported misrepresentation is included in the Settlement Agreement, the Court cannot find as a matter of law that either the integration clause or the nonreliance clause bars Plaintiff's claims.[9]

Defendants argue that "the entirety of PharMerica's claim is that, prior to execution of the Settlement Agreement, it was misled into believing that Meisels and West Suburban were unaffiliated." (Reply 6.) Thus, Defendants contend that "it is the reliance of these very pre-Settlement Agreement representations that are

---

[9] On February 11, 2011, Defendants filed a Motion for Leave to Supplement Their Motion to Dismiss and Motion to Stay Discovery with Newly Issued Court Decision ("Motion to Supplement"). In their Motion to Supplement, Defendants contend a newly issued state appellate court decision, *Benson v. Stafford*, 2010 WL 5487525 (Ill. App. Ct. Dec. 23, 2010), is directly on point and precludes Plaintiff's fraud claims as a matter of law. (Motion to Supplement ¶¶ 2-4.) However, the *Benson* court merely relied on its 2004 holding in *Tirapelli*, *see Benson*, 2010 WL 5487525, at *14-21, which Defendants have already cited (Reply 7), and which the Court has explicitly considered. Defendants' Motion to Supplement is denied.

contractually barred and deemed unreasonable as a matter of law by the non-reliance provision." (*Id.* 7.)

The Court does not find, for purposes of this Motion, that the Complaint confines its fraud claims solely to statements made outside of the Settlement Agreement. For example, the Complaint alleges that "in the settlement of the 2007 Lawsuit, Meisels, through its agent A&S, made repeated representations that he was "unrelated" and "unaffiliated" with West Suburban." (Compl. ¶ 63.) These representations include those made within the Settlement Agreement as well as those made during pre-Settlement Agreement discussions.

Defendants also contend that "if the purported misrepresentation were contained solely within the Settlement Agreement, then PharMerica would not have a fraudulent inducement claim—it would simply have a claim for breach of contract." (Reply 7.) The Court is not persuaded. Plaintiff is free to choose whether to bring its action as one for breach of contract or a suit for fraud. There are tradeoffs between contract and fraud claims that a party must evaluate before filing its lawsuit. *See Extra*, 541 F.3d at 723-24 ("There are additional pleading requirements [in a suit for fraud], see, e.g., Fed.R.Civ.P. 9(b), and in Illinois fraud must be proved by clear and convincing evidence, and not just by a preponderance of the evidence, which is all that is required to prove a breach of contract. Also, the statute of limitations is shorter in a tort suit than in a suit for breach of a written contract-five years rather than ten. On the other hand, punitive damages can be awarded in a suit for an intentional tort, such as fraud, but not (with rare

exceptions, in a suit for breach of contract.") (internal citations omitted); *see also Kochert v. Adagen Med. Int'l, Inc.*, 491 F.3d 674, 676 (7th Cir. 2007) ("A fraudulent inducement claim generally requires an election of remedies: either affirm the contract, retain the benefits, and seek damages, or rescind the contract, return the benefits, and seek restitution (reimbursement for expenses incurred as a result of the fraud).").

Finally, Defendants assert that "the statement that '[the 2007 Lawsuit] Defendants are unrelated to West Suburban,' as found in the Settlement Agreement is not a representation or warranty from [the 2007 Lawsuit] Defendants; rather, it is a contractual term agreed upon by PharMerica as well." (Reply 7; *see* Mot. 15-16.) The applicable paragraph states:

> [The 2007 Lawsuit] Defendants are unrelated to [West Suburban] and are not responsible for payment for services rendered or products provided to, or at, the [Facility] after May 4, 2006. Accordingly, nothing herein shall be deemed to release, acquit or discharge any claims for services provided on or after May 4, 2006, at the [Facility] to [West Suburban].

(Settlement Agreement § 2.01.)

The assertion that the 2007 Lawsuit Defendants are not related to West Suburban appears to be a representation by the 2007 Lawsuit Defendants so that PharMerica would agree that West Suburban was solely responsible for any claims for services provided after May 4, 2006. If this statement was merely an agreed-upon concession by PharMerica, there would be no reason to indicate that the 2007 Lawsuit Defendants were unrelated to West Suburban; the clause could simply provide that the 2007 Lawsuit Defendants are not responsible for any charges

accrued after May 4, 2006. *See Robert Half Int'l, Inc. v. Thompson*, 1999 WL 138849, at * 6 (N.D. Ill. 1999) ("Illinois law requires that all contract terms be given meaning, if possible . . . ."). In any event, for purposes of this Motion to Dismiss, the Court cannot conclude as a matter of law that this clause is not a representation or warranty.[10]

## C. Rule 9(b)'s Heightened Pleading Standards

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Thus, "a plaintiff claiming fraud or mistake must do more pre-complaint investigation to assure that the claim is responsible and supported, rather than defamatory and extortionate." *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999) (internal citation and quotation marks omitted). "A complaint alleging fraud must provide the who, what, when, where, and how." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (internal citation and quotation marks omitted); *see Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.*, 536 F.3d 663, 668 (7th Cir. 2008) (The circumstances of fraud or mistake include the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.") (internal citation omitted). In a multiple-

---

[10] In their reply brief, Defendants assert for the first time that Plaintiff's damage theory is unsupported in the law. (Reply in Supp. of Mot. 11-12.) Arguments raised for the first time in a reply brief are waived. *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) ("The district court is entitled to find that an argument raised for the first time in a reply brief is forfeited.").

defendant action, the complaint should inform each defendant of the nature of his or her alleged participation in the fraud. *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994); *Wendt v. Handler, Thayer & Duggan, LLC*, 613 F. Supp.2d 1021, 1028 (N.D. Ill. 2009).

Nevertheless, the particularity requirements of Rule 9(b) "must be read in conjunction with Rule 8, which requires a short and concise pleading." *Gelco Corp. V. Duval Motors Co.*, 2002 WL 31875537, at *6 (N.D. Ill. 2002) (internal citation omitted). Thus, in applying Rule 9(b), a court should keep in mind the Rule's underlying purposes: "(1) to inform the defendants of claims against them and to enable them to form an adequate defense; (2) to eliminate the filing of a conclusory complaint as a pretext for using discovery to uncover wrongs; and (3) to protect defendants from unfounded charges of fraud which may injure their reputations." *SEC v. Benger*, 697 F. Supp.2d 932, 937 (N.D. Ill. 2010) (internal citation omitted). "Where the fraudulent scheme occurred over a period of time, the requirements of Rule 9(b) may be less stringently applied." *Id.* at 937-38. Further, Rule 9(b)'s particularity requirement is relaxed if "the information that is required to plead rests exclusively within the defendants' control, or is otherwise unavailable to [the plaintiff]." *In re Newell Rubbermaid Inc. Sec. Litig.*, 2000 WL 1705279, at *14 (N.D. Ill. 2000).

Plaintiff concedes that Counts I-V must be pled with the specificity required by Rule 9(b), but argues that its unjust enrichment claim (Count VI) and tortious interference with contract claim (Count VII) "are not based on fraudulent conduct

and therefore should not be evaluated under Rule 9(b)'s heightened pleading requirements." (Resp. 16.) Although claims of unjust enrichment and tortious interference with contract are not by definition fraudulent torts, "Rule 9(b) applies to averments of fraud, not claims of fraud, so whether the rule applies will depend on the plaintiffs' factual allegations." *Borsellino*, 477 F.3d at 507 (internal citation omitted). Thus, if Plaintiff's unjust enrichment or tortious interference with contract claims "sound in fraud"—that is, if they are "premised upon a course of fraudulent conduct"—they will implicate Rule 9(b)'s heightened pleading requirement. *Id.*

Here, the Complaint's introduction avers that "this case is about a series of sham transactions, material misrepresentations and fraud to thwart creditors—all the while directing funds, including Medicare and Medicaid funds paid by the government to Meisels and his other alter egos and entities." (Compl. ¶ 15.) The Complaint goes on to accuse Meisels of working "indirectly through his agents to perpetuate the fraud against PharMerica, including: [Stern], Meisels'[s] long standing lawyer who acted as the architect of the sham transactions to cheat creditors . . . . Meisels and his related entities' fraud and fraudulent transfers have prevented PharMerica from collecting on its judgment obtained against West Suburban." (*Id.* ¶¶ 16-17.) Moreover, Plaintiff's brief has numerous references to Defendants' alleged fraudulent conduct, demonstrating that this theory pervades its entire case. *See Borsellino*, 477 F.3d at 507 ("Furthermore, the appellants' opening brief is riddled with references to fraud, showing that this theory pervades their

entire case, but especially these three claims."); *Kennedy v. Venrock Assoc.*, 348 F.3d 584, 594 (7th Cir. 2003) (arguments in a party's brief can shed further light on whether the complaint sounds in fraud). Accordingly, all of Plaintiff's claims are subject to Rule 9(b)'s heightened pleading requirements.

Nevertheless, the Court finds that Plaintiff has pled its claims with particularity. As a general matter, the Complaint alleges that Defendants and their agents ("who") made numerous misrepresentations to PharMerica and participated in fraudulent transfers ("what"), which resulted in West Suburban being unable to pay for goods and services provided by PharMerica or pay the $249,373.16 Default Judgment obtained by PharMerica ("how") at the Facility ("where") over the course of a period from January 1, 2004 to the present ("when"). (*See* Compl. ¶¶ 2-8, 13, 18-24, 41, 47-70, 85-97.)

Defendants argue that "because PharMerica's pleadings are filled with vague and conclusory statements, rather than the particularized allegations of fact necessary for actions sounding in fraud, PharMerica's Complaint must be dismissed for failure to comply with Rule 9(b)." (Mot. 19.) First, Defendants contend that "while PharMerica makes much of purported misrepresentations made by 'A&S', it does not specify a person, and, moreover, totally absent are any semblance of dates or places when or where these purported misrepresentations took place." (*Id.* 18; *see* Reply 13-14.) On the contrary, the Complaint specifically alleges that "in the settlement of the 2007 Lawsuit, Meisels, through [his] agent A&S, made repeated representations that he was 'unrelated' and 'unaffiliated' with West Suburban."

(Compl. ¶ 63.) "A&S" were previously defined as Ashman & Stein, a general partnership comprised of Gary Ashman and Carey Stein. (*Id.* ¶ 16.) The misrepresentations took place during the course of the 2007 Lawsuit, and specifically in May 2008, A&S represented that Meisels was "unrelated" and "had no affiliation" with West Suburban. (*Id.* ¶¶ 63, 95.) These misrepresentations were corroborated in late April 2008, when Stein wrote on a draft of the settlement agreement and in email correspondence that West Suburban was "unrelated" to Meisels. (Resp. Exs. 3-6.)

Second, Defendants assert that while the Complaint alleges that "West Suburban is 'affiliated' or 'related' to Meisels, . . . PharMerica provides no facts whatsoever as to what these terms mean." (Mot. 19; *see* Reply 14.) On the contrary, the Complaint explains that like the Corporate Defendants, Meisels is "affiliated" or "related" to West Suburban because he "owns and/or controls" West Suburban. (Compl. ¶¶ 32, 115.) The Complaint also alleges that "Meisels was the real party in interest of West Suburban during the period giving rise to the Judgment . . . and during the period [after the 2006 Facility Transfer,] Meisels was 'completely unrelated' and had 'no affiliation whatsoever' per Stern and A&S, Meisels still had a financial interest in West Suburban." (*Id.* ¶ 89.) Defendants argue that terms like "real party in interest" and " financial interest" are still "conclusory and devoid of meaning." (Reply 14.) However, the Complaint clearly puts Defendants on notice as to the fraud they are alleged to have perpetuated: while Defendants represented

that Meisels was completely unrelated to West Suburban, he in fact owned, controlled or had a financial interest in West Suburban.

Third, Defendants argue that "PharMerica's allegations with respect to transfers of funds are entirely conclusory." (Mot. 19; *see* Reply 14-15.) However, the transfer of funds among and between various Defendants is within Defendants' exclusive control. "The particularity requirement of Rule 9(b) must be relaxed where the plaintiff lacks access to all facts necessary to detail his claim . . . ." *Corey v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998). That is especially the case where, as here, "the details are within the defendant's exclusive knowledge." *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994).

Finally, Defendants assert that "PharMerica's allegations that the Defendants are alter egos of Meisels and of each other are entirely conclusory and unsupported by any facts." (Mot. 19; *see* Reply 15.) However, Plaintiff alleges that West Suburban's legal bills were paid solely from Bloomingdale Terrace/Meisels's proceeds in the 2007 Facility Transfer of the Facility's real estate and from the sale of Continental's and Ambassador's real estate. (Resp. Ex. 12; *see also id.* Exs. 8-9.) Besides, additional facts are within the exclusive knowledge of Defendants. *See Corey*, 142 F.3d at 1051; *Jepson*, 34 F.3d at 1328.

In sum, the Complaint clearly provides the who, what, when, where, and how, *Borsellino*, 477 F.3d at 507, and informs Defendants of the claims against them so that they can form an adequate defense, *Benger*, 697 F. Supp.2d at 937.

## D. Failure to State a Claim

### 1. *Count I—Fraud*

"The elements of a claim for fraudulent misrepresentation, also referred to as common law fraud, are: (1) a false statement or omission of material fact; (2) knowledge or belief of the falsity by the party making it; (3) intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statements; and (5) damage to the other party resulting from such reliance." *Weidner v. Karlin*, 932 N.E.2d 602, 605 (Ill. App. Ct. 2010) (citing *Bd. of Educ. of City of Chicago v. A, C & S, Inc.*, 546 N.E.2d 580, 591 (Ill. 1989)). "A successful common law fraud complaint must allege, with specificity and particularity, facts from which fraud is the necessary or probable inference, including what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made." *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996). Moreover, the plaintiff's reliance on the fraud must be reasonable. *Minch v. George*, 917 N.E.2d 1169, 1178 (Ill. App. Ct. 2009).

Accepting all alleged facts as true, which the Court must do on a motion to dismiss, the Court finds that Plaintiff states a claim for fraud. The Complaint alleges that Meisels and the Corporate Defendants, directly or their agents, represented on numerous occasions during 2007 and 2008 that they were unaffiliated with West Suburban. (Compl. ¶¶ 51-52, 58, 63, 89.) PharMerica later learned that these statements were false—Meisels remained in control of the Facility through his *de facto* ownership of West Suburban. (*Id.* ¶ 97.) The

misrepresentations were made by Meisels and the Corporate Defendants with the intent of inducing Plaintiff to enter into an agreement with West Suburban and continue to provide goods and services to the Facility, despite the fact that West Suburban had no intent of paying PharMerica. (*Id.* ¶ 122.) Further, PharMerica asserts that it was damaged by the misrepresentations because it would never have agreed to continue providing goods and services to West Suburban had it known that Meisels and the Corporate Defendants were affiliated with West Suburban and Filippo. (*Id.* ¶ 123.)

Defendants contend that the alleged representations do not constitute false statements. (Mot. 21-22.) They argue that "none of PharMerica's allegations, including those made with respect to the 2006 operations transfer, the 2007 sale to Gubin, and the attorney billing record, give rise to any inference of a relationship [between Meisels and West Suburban] beyond that of landlord/tenant." (Reply 16.) However, the attorney billing records indicate that Meisels was consulted on matters related to West Suburban and paid for West Suburban's bills, either personally or with funds from the Corporate Defendants. (Compl. ¶¶ 91-93, 96-97; *see* Resp. Exs. 8-9). Even assuming that these allegations are insufficient circumstantial evidence of Meisels's control of West Suburban, the Complaint also alleges that "Meisels funded working capital, pulled out excessive fees in lease payments and personal expenses, and was instrumental in the ultimate sale of West Suburban to Gubin." (*Id.* ¶ 90.)

Defendants also argue that the Complaint fails to plead that: (1) Defendants intended to induce Plaintiff to do business with West Suburban; (2) Plaintiff's reliance on Defendants' representations were reasonable; and (3) Plaintiff's damages resulted from its reliance on Defendants' representations. (Mot. 20-25.) As to Defendants' contention that Plaintiff fails to plead intent to induce PharMerica to act, the Complaint clearly alleges that the misrepresentations were intended to induce "PharMerica to enter into an agreement with West Suburban and continue to provide pharmacy goods and services to the Facility, despite the fact that West Suburban had no intent to pay PharMerica for the pharmacy goods and services." (Compl. ¶ 122.) Defendants contend that Plaintiff's "assertion is simply not plausible when viewed in context with the other assertions of PharMerica's Complaint." (Reply 16-17.) While Defendants provide no explanation for what these "other assertions" might be (*see id.*), they apparently are referring to the assertion that "soon after PharMerica filed [the 2007 Lawsuit], Stern contacted PharMerica's counsel and stated that his client West Suburban, was improperly named in PharMerica's 2007 Lawsuit." (Compl. ¶ 48.) Defendants argue that "the context of the false statements alleged by PharMerica shows that they were intended to procure dismissal of West Suburban from the 2007 lawsuit." (Mot. 22.) However, the Complaint does not make this allegation. Further, even if the misrepresentations were given in context of the 2007 Lawsuit, Defendants' intent could still have been to convince PharMerica to provide goods and services to West Suburban.

Contrary to Defendants' argument, Plaintiff's reliance on Defendants' misrepresentations was reasonable. Generally, "justifiable reliance is a question of fact that is to be determined by the finder of fact and not the by the trial court as a matter of law." *Schrager v. North Community Bank*, 767 N.E.2d 376, 386 (Ill. App. Ct. 2002). Reliance can be determined as a matter of law "when no trier of fact could find that it was reasonable to rely on the alleged statements or when only one conclusion can be drawn." *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001).

Defendants contend that Plaintiff's reliance on Defendants' alleged misrepresentations was unreasonable because PharMerica believed, as far back as September 2007, when it filed its 2007 Lawsuit Amended Complaint, that Meisels and West Suburban had entered into a "sham transaction." (Mot. 22-24.) Defendants argue that "because [Plaintiff] had access to all the details of the alleged transaction that resulted in its damages, PharMerica cannot claim it reasonably relied on Defendants' representations." (*Id.* 24.) However, as discussed above, *see supra* § IV.A, the fraud allegations in the instant Complaint are materially different than those in the 2007 Lawsuit. Further, there were no allegations in the 2007 Lawsuit that PharMerica knew that Meisels was the real party in interest for West Suburban. Under these circumstances, the Court cannot conclude that Plaintiff's reliance was unreasonable as a matter of law.

Finally, Plaintiff has adequately alleged that its damages resulted from its reliance on the misrepresentations made by Defendants. Defendants argue that the

Complaint alleges that PharMerica was damaged not because it continued doing business with West Suburban but because of excessive lease payments made by West Suburban to Bloomingdale Terrace. (Mot. 24.) Defendants contend that "the 'expensive lease payments,' which PharMerica admits were disclosed to it, and West Suburban's alleged lack of funds, would have existed even absent any statement whatsoever by Defendants or any of their agents." (*Id.*) Plaintiff counters that the Complaint alleges that by misrepresenting the real owner of the Facility, Defendants

> induced it to continue to provide goods and services to another Meisels entity, for which it has not been paid. All the while Meisels directed West Suburban to pay him the Medicare funds that should have been used to pay PharMerica under federal law, and Meisels took the consideration for the sale of the operations to Gubin that should have been available to pay PharMerica.

(Resp. 38.)

The Complaint alleges that because of the misrepresentations made by Defendants, Plaintiff continued to do business with West Suburban. (Compl. ¶ 123.) Further, because Meisels was the true owner of West Suburban, Plaintiff was damaged when the operating funds of West Suburban, which should have gone to pay its creditors, including PharMerica, were instead diverted to Meisels. (*Id.* ¶ 124.) While PharMerica was aware of the "excessive lease payments" at the time of the alleged misrepresentations (*Id.* ¶¶ 53-55), the 2006 Facility Transfer agreements did not reveal that Meisels or the Corporate Defendants owned West Suburban (Resp. Exs. 3, 6). In other words, Plaintiff had no idea at the time that West Suburban's operating and lease agreements involved payments between

affiliated entities. The fraud became apparent to Plaintiff only after it discovered that the 2006 Facility Transfer was a "sham transaction" among affiliated entities. Thus, Plaintiff's damages were compounded because payments were being made to insiders instead of West Suburban's creditors. (Compl. ¶¶ 98-99, 124-25.)

Defendants also contend that the Complaint does not allege whether the amounts owed it by West Suburban accrued after the alleged misrepresentations. (Mot. 25.) However, the invoices attached to the Motion indicate that as of October 31, 2007, West Suburban owed PharMerica over $180,000, much of which had accrued after Stern first represented that West Suburban and Filippo were unrelated to and unaffiliated with Meisels and the Corporate Defendants. (*Id.* Ex. A; Compl. ¶¶ 41, 48-51.)

In its Reply, Defendants make the disingenuous argument that Plaintiff does not adequately plead causation for its damages because PharMerica would have been damaged no matter whether "West Suburban made its payments to a charity for starving children rather than to Bloomingdale Terrace pursuant to a lease." (Reply 18.) This is akin to arguing in a breach of contract claim that company A is not liable for breaching its contract with company B because company B would have been damaged no matter whether company A breached the contract or company C tortiously interfered with the contract. Here, the Complaint clearly alleged that Plaintiff was damaged by Defendants' misrepresentations **because** Plaintiff continued to do business with West Suburban, whose funds were being diverted to

Meisels and the Corporate Defendants. Whether the evidence supports that allegation is not for this Court to decide on a motion to dismiss.

Defendants' motion to dismiss Count I is denied.

### 2. Count II—Breach of Fiduciary Duty

"Under Illinois law, . . . recovery for a breach of fiduciary duty requires proof of three elements: '[1] a fiduciary duty exists, [2] that the fiduciary duty was breached, and [3] that such breach proximately caused the injury of which the plaintiff complains.'" *Gross v. Town of Cicero*, 619 F.3d 697, 709 (7th Cir. 2010) (quoting *Neade v. Portes*, 739 N.E.2d 492, 502 (Ill. 2000)). Corporate officers and directors owe a fiduciary duty to their corporation and its shareholders. *Brown v. Tenney*, 532 N.E.2d 230, 235 (Ill. 1988); *Technic Eng'g, Ltd. v. Basic Envitrotech, Inc.*, 53 F. Supp.2d 1007, 1010 (N.D. Ill. 1999). But, generally, officers and directors owe no duties to any third parties. *Technic Eng'g*, 53 F.2d at 1010 (citing *Beach v. Miller*, 22 N.E. 464, 466 (Ill. 1889)); *see also In re Rehabilitation of Centaur Ins. Co.*, 632 N.E.2d 1015, 1018 (Ill. 1994) (creditors are "generally not capable" of asserting breach of fiduciary actions against corporate officers). "A corporate officer or director's duties change, however, if the corporation becomes insolvent." *Technic Eng'g*, 53 F. Supp.2d at 1011 (citing *Atwater v. American Exch. Nat'l Bank of Chicago*, 38 N.E. 1017, 1022 (1893)). In other words, "from the moment a corporation becomes insolvent, its assets of the corporation are deemed to be held in trust for the benefit of its creditors." *Paul H. Schwendener, Inc. v. Jupiter Elec. Co.,*

*Inc.*, 829 N.E.2d 818, 828 (Ill. App. Ct. 2005); *accord Technic Eng'g*, 53 F. Supp.2d at 1011.

The Complaint alleges that West Suburban became insolvent as early as May 2007 when it was unable to pay its debts as they became due, including the debt owed to PharMerica. (Compl. ¶¶ 101-02, 104-05, 132-34; Mot. Ex. A); *see* 740 ILCS § 160/3(b) ("A debtor who is generally not paying his debts as they become due is presumed to be insolvent."). During the time that West Suburban was insolvent, it transferred assets to Meisels via excessive lease payments to Bloomingdale Terrace. (Compl. ¶¶ 124, 133.) The Complaint contends that Filippo—named owner and manager of West Suburban—and Meisels—West Suburban's *de facto* owner and manager—breached their fiduciary duties when they used West Suburban's assets to pay Meisels and his related entities before paying creditors like PharMerica. (*Id.* ¶¶ 135-36, 138-40.)

In their Motion, Defendants contend that Count II fails to state a claim because: (1) there is no basis for a fiduciary duty owed by Meisels; (2) Plaintiff fails to adequately plead that West Suburban was insolvent; and (3) Plaintiff fails to plead breach of any duty. (Mot. 25-27.) The Court is not persuaded. First, as to Meisels, Defendants argue that "a party who is admittedly not an owner, officer, or director of a corporation [does not] owe a fiduciary duty to the creditors of that corporation under any circumstances." (Reply 19.) On the contrary, *de facto* officers or directors owe fiduciary duties to their corporations and, under appropriate circumstances, to the corporation's creditors. *See Monfardini v. Quinlan*, 2004 WL 533132, at *5 (N.D.

Ill. 2004) (*de facto* director owed fiduciary duty to corporation); *see also H & H Press, Inc. v. Drew Axelrod*, 638 N.E.2d 333, 339 (Ill. App. Ct. 1994) ("Corporate officers exercising the functions of their offices under color and claim of authority, even if unlawfully elected, are nevertheless *de facto* officers."); *Clark v. Board of Fire & Police Comm'rs of the Village of Bradley*, 613 N.E.2d 826, 828 (Ill. App. Ct. 1993) (*De facto* corporate officer's acts are valid "as against the public or third parties."). Here, the Complaint alleges that after operations of the Facility were transferred to West Suburban, Meisels maintained control over the Facility through its "straw man" owner Filippo. (Compl. ¶¶ 29, 89-93, 96, 126, 138.) In any event, whether Meisels was acting as a *de facto* owner and manager of West Suburban is a factual issue for the jury to determine. *See H & H Press*, 638 N.E.2d at 339 ("The authority of an officer may be proved by evidence of her having previously exercised certain powers as officer or agent with the approval or recognition of the corporation.")

Second, Plaintiff had adequately pled that West Suburban was insolvent. Under Illinois law, "a debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." 740 ILCS § 160/3(a). Further, "a debtor who is generally not paying his debts as they become due is presumed to be insolvent." *Id.* § 160/3(b). Here, the Complaint alleges that as early as May 2007, West Suburban failed to pay its debts as they became due. (Compl. ¶¶ 125, 132; *see also* Mot. Ex. A); *see Technic Eng'g*, 53 F. Supp.2d at 1012 ("Technic has presented sufficient evidence that, at the time of the transfer of Environmental's assets[,]

Environmental was generally not paying debts as they came due . . . .”). Further, the Complaint alleges that West Suburban was insolvent by the time of the 2007 Facility Transfer. (Compl. ¶¶ 101-02, 104-05, 133-34.) Thus, PharMerica has adequately pled that West Suburban was insolvent during the time it was transferring assets to Meisels.

Finally, the Complaint adequately alleges that Meisels and Filippo breached their fiduciary duties to Plaintiff by transferring assets to themselves through lease payments, instead of paying West Suburban’s creditors, like PharMerica. (Compl. ¶¶ 27, 38, 88, 90, 104, 124, 136, 140.) Further, the Complaint alleges that Meisels and Filippo unlawfully transferred West Suburban’s assets by loading the consideration for the 2007 Facility Transfer into the proceeds for the real estate, thus avoiding West Suburban’s liability to its creditors, such as PharMerica. (*Id.* ¶¶ 67-70, 98-99.) Defendants contend that the lease payments were merely payments between a debtor and creditor, which do not implicate a fiduciary duty claim. (Reply 20.) However, the Complaint alleges that the lease payments by West Suburban were made to an insider—Meisels—which is an unlawful transfer when done at the loss of creditors. *See O’Connell v. Pharmaco, Inc.*, 493 N.E.2d 1175, 1182 (Ill. App. Ct. 1986) (“It is also unlawful for corporate directors to manipulate corporate property so as to pay their own claims against the company to the loss of creditors. When an officer breaches his fiduciary duty by wrongfully converting or misappropriating funds and thereby adversely affecting the relation between the

corporation and its creditors, a creditor can maintain an action against the officer personally.").

Defendants' motion to dismiss Count II is denied.

### 3. *Count III—Conspiracy to Breach Fiduciary Duty*

In Count III, the Complaint alleges that the Corporate Defendants collectively conspired to further Meisels's and Fillipo's breach of their fiduciary duties to PharMerica as creditor of West Suburban. (Compl. ¶¶ 142-49.) In Illinois, "the elements of civil conspiracy are: (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Fritz v. Johnston*, 807 N.E.2d 461, 470 (Ill. 2004); *accord Merryman Excavation, Inc. v. Int'l Union of Operating Eng'rs*, 2007 WL 1232198, at *3 (N.D. Ill. 2007).

Defendants contend that the Complaint fails to adequately plead all of the elements of a conspiracy claim. (Mot. 28.) The Court disagrees. First, the Complaint specifically lays out the unlawful scheme:

> All of the Defendants carried out this scheme as it relates to West Suburban by facilitating the transfer of exorbitant amounts of rent payments to Bloomingdale Terrace for the benefit of Meisels and Filippo, and their related entities, including the Corporate Defendants, thus depleting the amount of assets available to satisfy West Suburban's legitimate creditors such as PharMerica, and structuring the transfer of assets for the explicit purpose of avoiding the claims of legitimate creditors, such as PharMerica. Each of these transfers was conducted in furtherance of this common scheme.

(Compl. ¶ 148; *see id.* ¶¶ 28, 79, 85-97; *see also id.* ¶ 86 (" The objective [of the conspiracy was] to cheat creditors and divert money to [Meisels] and his related entities, including the Corporate Defendants.").) Second, the Complaint specifies the overt acts committed in furtherance of the conspiracy, including: (1) "the transfer of assets for the explicit purpose of avoiding the claims of legitimate creditors" (*id.* ¶ 148); (2) the 2006 Facility Transfer (*id.* ¶¶ 29-30, 38-40, 88); (3) the settlement of the 2007 Lawsuit (*id.* ¶¶ 62-66); and (4) Defendants' fraudulent representations which led to PharMerica providing goods and services to West Suburban (*id.* ¶¶ 48-62).

Defendants argue that the Complaint does not adequately describe each Defendant's precise role in the conspiracy. (Mot. 28.) A complaint "should not lump multiple defendants together, but should inform each defendant of the specific fraudulent acts that constitute the basis of the action against the particular defendant." *Suburban Buick, Inc. v. Gargo*, 2009 WL 1543709, at *4 (N.D. Ill. 2009) (internal citation omitted). Nevertheless, a complaint need only generally inform each defendant of specific fraudulent acts that justify its inclusion in the claim. *See H.G. Gallimore, Inc. v. Abdula*, 652 F. Supp. 437, 441 (N.D. Ill. 1987) ("Where there are multiple defendants, the complaint must inform each defendant of the specific fraudulent acts justifying his inclusion in the count. However, Rule 9(b) only requires that the complaint generally outline a fraudulent scheme and reasonably notify each of the defendants of their respective roles.") (internal citation omitted); *see also Bridon Am. Corp. v. Mitsui & Co., Inc.*, 1983 WL 1897, at *5 (D.D.C. 1983)

("The general rule requiring specific allegations of time, place and content is relaxed somewhat as to matters peculiarly within the adverse party's knowledge or where the issues are complex, or the transactions involved cover a long period of time.").

Here, Defendant Bloomington Terrace received the "exorbitant" rent payments, which are part of the alleged scheme. (Compl. ¶ 148.) Defendant Continental allegedly participated in the scheme by intermingling its legal fees with West Suburban's fees. (*Id.* ¶ 93.) Further, Defendants BCDM and Ambassador each represented that they were unrelated to and not affiliated with West Suburban. (*Id.* ¶ 52.) However, the Complaint does not describe in any meaningful way how Defendants Bloomington Pavilion or Meisels Family LP participated in the alleged scheme.[11]

Defendants' motion to dismiss Count III is granted as to Defendants Bloomington Pavilion and Meisels Family LP but denied as to the other Defendants.

### 4.  *Count IV—Inducement of a Breach of Fiduciary Duty*

Count IV alleges that Defendants Continental and Bloomingdale Terrace colluded with Meisels and Filippo in committing the breach of fiduciary duties owed to Plaintiff. (Compl. ¶¶ 150-57.) In Illinois, "to hold a third party directly liable to an aggrieved party for inducement to breach fiduciary duty, three elements must be present: (1) a third party colludes with a fiduciary in committing a breach of duty;

---

[11] Plaintiff cites *Banowitz v. State Exchange Bank*, 600 F. Supp. 1466, 1469 (N.D. Ill. 1985) for the proposition that "the fraudulent acts complained of need not be attributed to [each insider] if the complaint sufficiently describes the fraudulent acts and provides the individuals with sufficient information to answer the allegations." (*See* Resp. 48 n.10.) In *Banowitz*, however, the insiders were all corporate officers of the same corporations, not separate corporate entities. 600 F. Supp. at 1467.

(2) the third party induces or participates in such breach; and (3) the third party

obtains benefits therefrom." *Sears, Roebuck & Co. v. Malony*, 1998 WL 214689, at

*6 (N.D. Ill. 1998) (citing *Regnery v. Meyers*, 679 N.E.2d 74, 80 (Ill. App. Ct. 1997)).

Defendants contend that the Complaint fails to adequately plead all of the

elements of an inducement claim. (Mot. 28-29.) The Court disagrees. First, the

Complaint specifically describes the alleged collusion:

> Meisels, Filippo, Continental and Bloomingdale Terrace carried out
> this scheme as it relates to West Suburban by facilitating the transfer
> of exorbitant amounts of rent payments to Bloomingdale Terrace for
> the benefit of Meisels and Filippo, and their related entities, including
> the Corporate Defendants, thus depleting the amount of assets
> available to satisfy West Suburban's legitimate creditors such as
> PharMerica, and structuring the transfer of assets for the explicit
> purpose of avoiding the claims of legitimate creditors, such as
> PharMerica. Each of these transfers was conducted in furtherance of
> this common scheme.

(Compl. ¶ 155; *see also id.* ¶ 93 (Meisels used the assets of the sale of his real estate

entities—Bloomingdale Terrace and Continental—to pay for West Suburban's legal

services).) Second, each Defendant benefitted from the breach of fiduciary duty

when they "received the funds that should have been paid to PharMerica for

pharmacy goods and services that were provided to West Suburban at the Facility

and instead were transferred as inflated lease payments and otherwise fraudulent

transfers to them." (*Id.* ¶ 156.)

Defendants' motion to dismiss Count IV is denied.

### 5. Count V—Fraudulent Transfer

In Count V, the Complaint alleges that Meisels and Filippo made fraudulent,

insider transfers from West Suburban to Meisels and Bloomingdale Terrace when

Meisels, Filippo and Bloomingdale Terrace had reasonable cause to believe that West Suburban was insolvent. (Compl. ¶¶ 158-71.) Under the Illinois Uniform Fraudulent Transfer Act ("UFTA"), "a transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation" by actual or constructive fraud. 740 ILCS § 160/5(a). "'Fraud in fact' or actual fraud pursuant to § 160/5(a)(1) of the UFTA occurs when a debtor transfers property with the intent to hinder, delay or defraud his creditors." *In re Phillips*, 379 B.R. 765, 777 (Bankr. N.D. Ill. 2007). Further, "a transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent." 740 ILCS § 160/6(b).

Defendants contend that the Complaint does not identify whether Plaintiff is alleging actual or constructive fraud. (Mot. 31.) On the contrary, the Complaint clearly asserts that Meisels, Filippo and Bloomingdale Terrace violated the UFTA by actual fraud: "West Suburban made transfers to Meisels and Bloomingdale Terrace that were made with <u>actual intent to hinder, delay, or defraud their creditors</u>, including PharMerica in the collection of its judgment." (Compl. ¶ 165) (emphasis added).

Defendants argue that Plaintiff's allegations: (1) are nonspecific and conclusory, (2) fail to plead that Meisels and Bloomingdale Terrace are insiders; and (3) fail to

allege the remaining "badges of fraud." (Mot. 29-34.) The Court finds Defendants' arguments unpersuasive.

The Complaint pleads the fraudulent transfer claim with sufficient specificity. During the period in which West Suburban—and Defendants as alter egos of West Suburban—failed to make payments to PharMerica for outstanding goods and services provided to the Facility, West Suburban continued to make lease payments to insiders, namely Meisels and Bloomingdale Terrace. (Compl. ¶¶ 23, 162, Ex. 1.) Further, the 2007 Facility Transfer was made without adequate consideration because all sale proceeds were transferred to insiders Meisels and Bloomingdale Terrace, instead of to West Suburban's creditors, such as PharMerica. (*Id.* ¶ 167.) Moreover, the Complaint alleges actual intent to defraud Plaintiff. For example, it alleges that because of the fraudulent transfers, Defendants were in a position to never pay PharMerica for the amounts owed for goods and services provided to the Facility or to satisfy the default Judgment from the 2008 Lawsuit. (Compl. ¶¶ 39, 70, 98, 101-02, 165, 169.)

Finally, to determine actual intent, the UFTA sets forth the following indicia that may be considered by the trier of fact:

> (1) the transfer or obligation was to an insider;
> (2) the debtor retained possession or control of the property transferred after the transfer;
> (3) the transfer or obligation was disclosed or concealed;
> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (5) the transfer was of substantially all the debtor's assets;
> (6) the debtor absconded;
> (7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

740 ILCS § 160/5(b). "When these 'badges of fraud' are present in sufficient number, it may give rise to an inference or presumption of fraud." *Steel Co. v. Morgan Marshall Indus., Inc.*, 662 N.E.2d 595, 602 (Ill. App. Ct. 1996). While there is no requirement that these indicia be specifically alleged, the Complaint includes sufficient "badges of fraud."

First, as discussed above, the Complaint alleges that Meisels and Bloomingdale Terrace are insiders. (Compl. ¶¶ 69, 90, 92-93, 96, 98-99, 124-25, 138, 161.) Second, the alleged fraudulent transfers were substantially all of West Suburban's assets, since it was unable to pay for goods and services provided by PharMerica from April through October 2007, or to satisfy the Default Judgment. (*Id.* ¶¶ 18-24.) Third, West Suburban was insolvent or became insolvent shortly after the transfer was made because it was unable to pay its obligations to its creditors as they became due. (*Id.* ¶¶ 18-24, 101, 132-33.)

Defendants' motion to dismiss Count V is denied.

### 6. *Count VI—Unjust Enrichment*

The Complaint alleges in Count VI that Defendants were unjustly enriched through the receipts of goods and services provided to West Suburban for which

West Suburban and Defendants, as alter egos of West Suburban, have not made payment. (Compl. ¶¶ 172-75.) "The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification and (5) the absence of a remedy provided by law." *Sherman v. Ryan*, 911 N.E.2d 378, 398 (Ill. App. Ct. 2009) (internal citation omitted). Defendants argue that Plaintiff fails to adequately plead the elements of unjust enrichment. The Court disagrees.

First, Plaintiff specifically asserts that Defendants are alter egos of one another and West Suburban. For example, the Complaint alleges that each of the Corporate Defendants "operate without respect for corporate formalities and in a manner that is inconsistent with their being separate and distinct legal entities." (Compl. ¶ 111.) Further, the Complaint states that

> Meisels so controlled and manipulated West Suburban and the Corporate Defendants that they have become mere instrumentalities of Meisels, and of each other, by among other things: (a) directing payment of insider debts, including Meisels and each other, before third-party creditors; (b) commingling funds; (c) sharing other assets without a corresponding exchange of value; (d) intentional undercapitalization for the business in which they were engaged; (e) leveraging unprofitable entities to ensure that the more profitable entities remain profitable and available to provide funds to Meisels and other insiders; and (f) using the Corporate Defendants as business conduits for Bloomingdale Terrace as the dominant entity (which had no trade creditors) and other insiders.

(*Id.* ¶ 115; *see also* ¶¶ 93, 97, 111-12.) Second, all Defendants benefitted when West Suburban received goods and services for which it made no payments to PharMerica because they all "operate without respect for corporate formalities and in a manner that is inconsistent with their being separate and distinct legal entities." (*Id.* ¶ 111.)

Finally, the Complaint specifically alleges that "Defendants, as alter egos of West Suburban, have been unjustly enriched through the receipt of such goods and services at the expense of PharMerica." (*Id.* ¶ 175.)

Defendants' motion to dismiss Count VI is denied.

### 7. Count VII—Tortious Interference with Contract

Count VII, which is pled in the alternative to Count III, alleges that Defendants Meisels, Filippo and Bloomingdale Terrace tortiously interfered with West Suburban's contract with PharMerica. (Compl. ¶¶ 176-80.) "The elements required to state a cause of action for tortious interference with contract are (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of the contractual relationship between the plaintiff and another; (3) the defendant's intentional and unjustifiable inducement of a breach of the contract; (4) a breach of contract by the other caused by the defendant's wrongful acts; and (5) damage to the plaintiff." *Fieldcrest Builders, Inc. v. Antonucci*, 724 N.E.2d 49, 61 (Ill. App. Ct. 1999). Defendants argue that Plaintiff fails to adequately plead the elements of tortious interference with contract. The Court disagrees.

First, the Complaint adequately alleges that Defendants Meisels, Filippo and Bloomingdale Terrace intentionally and unjustifiably induced West Suburban to breach its contract with PharMerica. The Complaint asserts that Defendants caused the breach through exorbitant lease payments to Bloomingdale Terrace and by loading all the consideration for the 2007 Facility Transfer into the purchase of

the real estate, leaving West Suburban with no assets to pay its creditors, including PharMerica. (Compl. ¶¶ 26, 37-38, 67-70, 88, 90; *see id.* ¶ 169.) Second, the Complaint alleges wrongful acts on the part of these Defendants—*i.e.*, taking the funds for themselves and leaving West Suburban as a shell with no assets to pay its creditors. (*Id.* ¶¶ 26, 37-38, 67-70, 88, 90.) Finally, as discussed above, the Complaint alleges that the lease payments from West Suburban to Bloomingdale Terrace were not merely of a debt to a legitimate creditor, but were from one insider to another. (*Id.* ¶¶ 27, 30, 38, 86, 88-90.)

Defendants' motion to dismiss Count VII is denied.

## V. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss [30] is **granted in part and denied in part**. The claims against Defendants Bloomington Pavilion, LLC and Meisels Family Limited Partnership in Count III are dismissed.

Defendants' Motion to Strike [58] is **granted in part and denied in part**. Defendants' Motion to Stay Discovery Pending Adjudication of Their Motion to Dismiss [62] is **denied as moot**. Plaintiff's Motion Requesting Oral Argument on Defendants' Motion to Dismiss [50] is **denied as moot**. Defendants' Motion for Leave to Supplement Their Motion to Dismiss and Motion to Stay Discovery with Newly Issued Court Decision [78] is **denied**.

ENTER:

Dated: February 16, 2011

_Nan R. Nolan_

NAN R. NOLAN
United States Magistrate Judge